The Second Amendment does not tolerate punishing someone for lawfully possessing a firearm that a judge has found probably played no role in their crime. The Court should reverse Mr. Alaniz's sentence under Bruin because at Step 1, the Second Amendment's plain text protects Mr. Alaniz's right to possess firearms in his home and truck, and at Step 2, the government failed to carry its burden to identify a distinctly similar historical tradition of enhancing punishment for trafficking offenses when the defendant possessed firearms that the fact-finder found probably were not used in the crime. Given the overlap between views... Well, but is the question... That's a little narrow. The fact-founder found that they probably weren't used in the crime, but there's also a finding, in order to apply the guideline, that they were possessed in connection with the crime, correct? So there's a finding that there was a spatial and temporal nexus. They were possessed in connection with the crime. That's what the guideline commentary requires. Also, the guideline commentary requires a finding that it's not... Those temporal and proximate closeness, if you will, are markers for being possessed in connection with the crime. The guideline, doesn't the guideline require that they be possessed in connection with the crime? The guideline requires two things.  No, just stop there for a moment. Sure. Tell me, if they were possessed in connection with the crime, isn't his proposed course of conduct possessing firearms while trafficking drugs? I think not, because there are two... I think the burden, the second piece of my answer to your question is the disparate burdens. There's a... I understand there's this initial connection. The language of connection can, I think, be misleading in this context. There's this initial threshold showing of the nexus, of the spatial and temporal nexus. But in this case, what that means was there were firearms in Mr. Allen's home. Right, but he was convicted of a drug trafficking conspiracy. He was, while firearms were present in his home. Right, with lots and lots of firearms present in his house. And again, I think it's important... Yes. I mean... Yes, absolutely. Oh, yes, of course. Of course. Yes. So why... And so the guideline says if you're convicted of a crime and firearms are in close proximity to you at the time that you're committing the crime, we're going to enhance your punishment a little, some. I'm still focusing on the proposed course of conduct here. Isn't the proposed course of conduct that it's...  No, I don't think so. And again, I think I'm going to return to the... I think, as I understand the question, it's essentially, look, does the Second Amendment really encompass that conduct and shouldn't we characterize the conduct at that level? The conduct is not simple firearms possession in the home, as I characterize it. The conduct is firearms possession during the course of or while committing a drug trafficking offense. And in connection with. And in connection... Which is what the guideline requires. And you're not making a factual argument that they weren't possessed in connection with. No. You're just arguing that the government didn't bear its burden of showing they were actually used in the commission of the crime. I disagree with that, actually. So Judge Windmill below found that Mr. Allen was safety valve eligible. To make that finding, he had to find that the guns probably played no role in the offense. That finding is in the record. The separate issue, and what really drives this case, is whether I was able to carry the further burden under the guideline of showing that it was not clearly improbable, or it was clearly improbable that the firearm played a role. And you're not contesting that. I'm not contesting that factual finding. What I'm claiming is, or my argument is, that this scheme violates the Second Amendment. And with respect to the issue of, you know, sort of the court's question about how to characterize the conduct, I think it's important to characterize Mr. Allen's conduct in this case as possession of firearms, full stop. At the level of plain meaning, Step 1 of Bruin. We can then go on to analyze, I think under Step 2, it's more appropriate to analyze sort of the circumstances surrounding that. There was drug trafficking proximate to having a spatial and temporal nexus to the possession. But under the analytical framework of Bruin, the first step is the conduct. And the reason that's important is a couple of things. First, I think that the facts of this case highlight it. The court found that he probably did not possess firearms in connection with drug trafficking. And so I think that, you know, that just illustrates this sharp distinction between the possession of firearms and the circumstances. I think, secondly, it's important not to. Again, you've mischaracterized what the court found. The court found he probably did not possess, use the firearms. What does the relief valve require? What's the finding there? So under U.S. v. Nelson, 2000 case, Ninth Circuit, same exact conduct for both. This court has held for both. For safety valve eligibility, you're ineligible if you do the exact same conduct as for purposes of 2D1.1. What does the safety valve provide? What does the language say? It's simply possession of firearm in connection with the offense. In connection with the offense. Correct. And exactly. So the court found that he probably did not possess firearms. I don't want to monopolize your time, but if the judge had not found your client eligible for the safety valve, would you have any argument? I think I would, but I think the finding that he was eligible for the safety valve is an added factor that assists me and is important in this case. So help me out. Let's assume that there was no such finding. Why would you win? Well, so the issue then would be, I think we revert to Bruin. The first question is, okay, the conduct here is possession of a firearm. Then the question is, you know, assume Mr. Allen is a member of the people. We've now got presumptive constitutional conduct. We then revert to step two, and step two is the historical tradition where the government needs to carry its burden to prove that possession of a firearm under those circumstances where it's not clearly, you know, I haven't been able to carry a burden to show it's clearly improbable that they were related to the drug trafficking offense. The government needs to carry the burden to show that there was distinctly similar historical regulation from the time of ratification that supports the constitutionality or shows that the Second Amendment didn't extend to that conduct. But when you described the protected conduct, you said possession of a gun, and then you stopped there. You didn't say possession of a gun in connection with unlawful activities. Correct. And that's my position. My position on that is that you can't conflate the conduct of possessing a gun, which is covered by the Second Amendment, with the context, the circumstances, of in connection with illegal activity. And the reason I think it's important not to conflate those two things is that all of a sudden at that point, you can do an in run around the sort of the plain meaning analysis that Bruin asks us to do. All of a sudden, if the legislature makes anything unlawful, you can say, well, they possessed the firearm in connection with unlawful activity. And so, you know, basically the legislature can adjust the scope of the Second Amendment right simply by legislating. That's not how the constitution. In your argument, do you draw a distinction, if any, between in connection with a crime versus in furtherance of a crime? I think that in furtherance of a crime is not before the court in this case. No, I understand that. I'm trying to figure out the limits of your argument. I think the end. Is there a distinction between possessing of a gun in connection with a crime for safety, without eligibility purposes and somebody who basically is charged with possessing a gun in furtherance of a crime? So I think there are two. I think that's an interesting question. And the reason I respond in that way is because I think you'd need to do a separate historical analysis at Bruin Step 2 for the in furtherance of a crime, an analysis that is not before the court in this case. So I cannot speak to the historical record on that. But I think intuitively it's a very different circumstance. This is a case where, again, sort of the facts are that Mr. Allen has possessed a, you know, the court found that there were firearms in his home, but the firearms were not possessed, probably not possessed in connection with the offense. Can I ask you a question that doesn't deal with Bruin? Your client got a below-guideline sentence. Correct. Right. And there was a he got extra guideline points, if you will, because he possessed the weapons, but then the judge took it back down because he gave him a safety-value release. Correct. How does Bruin apply to sentencing within the statutory guidelines? Well, I think the Constitution prohibits taking into consideration. I know you think that. But tell me, are there any cases that apply Bruin to a discretionary sentencing decision? In other words, could the judge have simply said, look, here's a sentence I'm inclined to give you. You're a guy with a bunch of guns engaging in drug trafficking. That points me up. On the other hand, there hasn't been much showing that the guns were used in connection to further this crime. So I'm going to take you back down. I mean, we're not dealing here with making something illegal. We're talking about a sentencing decision. So what do the cases say about that? So a couple of points to that. The first is the government doesn't contest that Bruin applies here. But secondly, there's a whole set of cases that broadly says you cannot take into consideration. You can't punish someone for exercising their constitutional rights. And enhancing Mr. Allen's punishment under the guidelines. But we're supposed to look at future dangerousness under 3553. And so here's a guy who's engaged in drug trafficking, a dangerous occupation, where there's often violence. And he's got instruments of violence in his house. Why isn't the judge inclined to say I'm inclined to give you a little bit higher sentence than I might give to an unarmed drug trafficker? What's wrong with that? He may well be, but it's not harmless error to apply a guideline in violation of a person's constitutional rights. Yeah, I guess I'm just asking whether or not you're going to do better if you go back. And that's a separate question. It's a separate question. I'd love to know the answer from Judge Windmill, and I hope the court gives me the opportunity to find out. I will reserve. Your questions actually took you over time, but I'll give you two minutes on rebuttal. But wait, let me. I appreciate that. Let's hear from the government. May it please the court. Serena Hargrove on behalf of the United States. I want to begin by clarifying something about the word connection. I think that it's possible to use it in two different ways. And 2D1.1, the guideline at issue here, allows for an increase of two levels if a dangerous weapon, including a firearm, was possessed. Whereas 5C1.2, the safety valve provision, makes a defendant ineligible for relief if he has used a firearm in connection with the offense. So in connection with is actually the greater. And what we're dealing with here under 2D1.1 is something less than that. That said, in Baldwin, this court explained that what's really required is dominion and control over the firearms during the course of a crime. And it used the word connection just to confuse things a little more. It says, constructive possession requires the government to prove a sufficient connection between the defendant and the item to support the inference that the defendant exercised dominion and control. So in that sense, it's using the word colloquially, I would say. And so, yes, there has to be a nexus between the firearms and the crime. But it's less than. See, what you've just said doesn't really tell me about a nexus. It just tells me that while the person was committing the crime, and in this case, it's not a crime committed at one particular second. Correct. He also possessed or had dominion over a firearm. That satisfies the guideline, right? Correct. He had ready access to it. Okay. Why? So if that's the case, why do we exclude Mr. Alinez from the people at step one of the analysis? Your Honor. A person. He is absolutely a person. And there is some support, especially in Vonce, for our argument that he's excluded from the people. But the court doesn't have to go that far to understand that he's excluded from the core Second Amendment right under the first prong. In other words, it's possible to say, okay, the people means the people, means the same thing in all of the amendments in which it appears. But we know that the Second Amendment was a pre-existing right that was codified into the Bill of Rights as it already existed. And so the task for the court is to try and discern, and this is what Bruin instructs us, to try and discern what that pre-existing right entailed at the time it was enshrined in the Constitution. And what we know from Bruin looking at the first prong is that Bruin provided a real definition and some guidance on what the core right, the core conduct protected by the Second Amendment was. Well, I assume you're about to go and say it only applies to law-abiding people. That is correct, Your Honor. Now, what troubles me about that argument is just what your friend said. If the legislature defines non-law-abiding in a certain way, then you don't even have to possess the weapon in connection with the crime. You're not law-abiding and therefore you're not one of the people. I have no idea, by the way, what the Supreme Court meant in Bruin. I suspect they didn't either, but they couldn't have meant that, could they? Your Honor, I think they could. Bruin said law-abiding responsible citizens, and it said that 14 times. This is not a mere mention. It said it in the very first sentence of the opinion. It may not be a good way to construct opinions by counting the number of times they use words, right? However, they used home how many times? Right, but the point that I'm trying to make is that the concept of home. The point that I'm making, though, is however they talked about it over 40 times, right? And then in Bruin, it's not limited to the home. It also includes the public. So just by counting law-abiding in the Bruin decision, I'm not sure it gets you to that's the limitation. Well, Bruin asked three questions to help discern what the scope of the core Second Amendment right is, and one of them was whether the citizens were law. The conduct being regulated was conduct involving law-abiding responsible citizens with ordinary self-defense needs who want to protect themselves. And you're entirely right, Your Honor. In Heller, they had just been looking at the home. Bruin said the right to self-defense, and drew on the history there, is primary, and that includes outside the home as well. And then there's also the requirement that these be ordinary weapons. Let me ask you this, counsel, and I know you're going to run out of time in this case, but you're arguing the next case as well, right? Yes. So tell me what the limiting principles you would apply to the law-abiding citizens at the first step of the Bruin analysis. Your Honor, I have read Bruin so many times, and I would love to tell you there is some secret footnote or something that explains and puts a limiting principle on law-abiding responsible citizens. The best I can say is that— Well, we're trying to figure Bruin out ourselves too. Absolutely. And if you're going to rely on the limitation of the Second Amendment to law-abiding citizens, I think you're going to have to go beyond Bruin to help us understand, if we were to accept that argument, what limiting principles the government would apply towards that. Absolutely, Your Honor. Absolutely, Your Honor. Well, I think it's very telling that both Heller and Bruin, even though they were dealing with regulations that they said regulated the very core of the Second Amendment right, even though they were dealing with those regulations, each of those majorities took the time to point to a system, an already existing system of laws under which Congress in one case and 43 states in another do regulate and do decide who is law-abiding and who is not. You're having the same problem I've been having, so this is not critical. And we're focused on step one. I'd like to give you some time to get to step two. But let's assume for a moment that Bruin can't mean that whenever somebody convicted of a crime possesses a gun somewhere, that he loses the First Amendment right to possess a gun. If I'm a drunk driver and I have a gun in my house, I'm not sure Bruin says that I can be kept from having a gun for self-defense. So we're struggling for a limiting principle. And the fact that it's been regulated for a long time strikes me as a step two issue. What's our limiting principle on law-abiding citizens? Or is it the government's position that whenever we have a criminal defendant in front of us, he's not one of the people covered by the Second Amendment? Your Honor, I don't think he could still be a member of the people. But the question is, was he included in the crime? Okay, let's put it differently. Does every criminal defendant fail at step one? What about somebody convicted of misdemeanor driving on a suspended license? I think that they were convicted of DUI, didn't go to the right classes, now the license has been suspended, it's been five years, you sort of give up on trying to pursue that path, you keep driving to work, and now you're picked up and convicted of misdemeanor driving with a suspended license. That's a conviction. That's a non-law-abiding person. And now we're getting to the historical analog, so you're moving away from your... No, no, the first prong is not just the plain text, but it's the plain text interpreted in the light of history. And that's so important because we're trying to discern what the plain text meant to the people who are enshrining this amendment into the Constitution. So I know, it's confusing. To figure out who falls within the scope of law-abiding citizens, now you're saying that the Second Amendment doesn't apply to all Americans, it applies to a subset of individuals who are law-abiding, responsible citizens, right? That it protects their rights, that regulations, that Congress has authority and legislatures have authority to regulate a lot outside of the core, but they don't have the authority to regulate law-abiding citizens with ordinary self-defense needs who want to protect themselves using regular weapons. So if that's the case, what are the limits then on Congress's ability to regulate what you call this non-core conduct? The limits to regulate the non-core conduct, that... I mean, really, we're in a strange new world, right? That remains to be seen to some extent. But what we know, I mean, Justice Barrett explained in her dissent in Cantor that the legislative power to strip the right from certain people or groups was a historically accepted feature of the pre-existing right that the Second Amendment protects. So the legislature had that power when the Second Amendment was enacted, and they used it. I mean, they used it for some pretty offensive reasons, and they deprived a great number of people of Second Amendment rights, a number of people they didn't believe were trustworthy with guns, a number of people they didn't believe were full citizens, but they also eliminated groups who just weren't loyal or weren't following a law that required them to take an oath. So, for example, Quakers and Catholics for a time were unable to bear arms because they refused to take an oath. And, you know, the well-regulated right law article we discussed, and then why can't Martha Stewart have a gun, really goes into this. I mean, this was this concept of untrustworthiness and unwillingness to follow this one law, which required an oath. Have you met your burden, though, by just citing a law review article and a Cantor dissent? You have the burden to prong to anyway, but that seems to be a common theme, that the government thinks it's met its burden on historical context by citing to the Martha Stewart law review article and Cantor dissent. It doesn't seem to be the burden. What the government's proved at prong two doesn't seem to go much beyond that. Your Honor, again, I'm still on prong one, because I'm talking about the historical context. I suppose in the next case, but what is your burden? Don't you have, if you're at step two, you don't have to identify specific things right now, but don't you have, isn't it the government's burden to identify historical analogs? Yes, at step two, absolutely. When did you do that here? Your Honor, we did it in a brief. This guy was sentenced. At the time of sentencing, this points to a real problem with Bruin and the practicalities of how this works with criminal case schedules. The objection was made after the pre-sentence report and after our sentencing memo, and all of a sudden we're faced with a Bruin challenge. So we didn't get an expert. That's true. We didn't do that. We briefed the issue, we responded and said, the Second Amendment does not preclude the application of this guideline enhancement, and we briefly explained why, but we did not do more than that. It is a de novo inquiry, and Bruin itself looked at a lot of additional sources. But getting back to, I mean, I think the Court is entirely correct that the law-abiding citizen concept, responsible law-abiding citizens, it's very, very broad. And it will need limitation. But that's why we're asking for the government to propose what in its view are the appropriate limitations. But I'm still not sure what the limiting principles are in the government's view. We can take that up in the next case. You're over time unless my colleagues have any additional questions. All right, thank you very much. Thank you, Your Honor. Let's put two minutes on the clock. The limiting principle the Court is looking for is found at Step 2 of Bruin. That is the limiting principle. But then under your proposal, we don't have a Step 1. We do. All we have to do is figure out whether the person in front of us is a person. You have to figure out whether the person in front of you is a person for purposes of the people. And so there are going to be edge cases, there are going to be questions about whether foreign folks outside the country. What else do we do at Step 1? You figure out whether the conduct involves firearms. If someone comes in and says, my Second Amendment rights were violated because I'm being prohibited from expressing myself, that doesn't cover the Second Amendment. So if he used the firearm to commit an offense, does he fail at Step 1 or Step 2? If he fails, it's at Step 2. Well, it cannot be. It cannot be that armed robbery can't be punished more than unarmed robbery. Even your client doesn't need you to argue that. No, no, I agree with you. That's exactly right. No, I thought you were talking about my facts and everything. So if somebody uses it in connection with an offense, we're trying to figure out what Step 2. That's a Step 2. That's a Step 2 question. So Step 1 is merely figuring out whether the guy is asserting a real Second Amendment right and if he's a person. Absolutely. It's the plain text of the Second Amendment. The court spent a lot of time saying stuff that it could have said in one sentence. Step 1 is meaningless, then, in your view. No, it hasn't. It meaningfully delineates the right. It's the source of the right. It funnels out patently frivolous arguments, ones from somebody who is either not a person or is really not claiming a Second Amendment right at all. Everybody fits under Step 1. I think, yeah, I think the answer to that is correct. I would say that there are going to be edge cases that will come up that will actually pose interesting legal questions. I can foresee those, such as the people example that I alluded to. Although, remember, Justice Thomas's view that it only applies to citizens does not seem to be the majority view. An interesting question. So it applies to all people. All your clients are people. And all of them, because they're here fighting about this issue, will be fighting about Second Amendment rights. So what you're saying is in criminal cases, we can just skip past Step 1 and go directly to Step 2. You have to do Step 1, but I'm not seeing the – I understand that, you know, I'm not seeing the constitutional problem with not having Step 1 involve a huge amount of work in most cases. The Constitution is designed to protect rights, and if there's a simple and clear scope to Step 1, to the plain text of the Constitution, to me, that's good. That's a feature, not a bug. Let me just pose this for you because it's what troubles me. The Supreme Court has said that our previous two-step analysis at Step 1 was similar to what it wants now. And so what you're describing is not what we used to do at Step 1 of our previous analysis. We used to look at the conduct and see if the conduct was the kind of conduct protected by the First Amendment – Second Amendment, I'm sorry. And then we'd move on to our balancing test, which the Supreme Court threw out. But the Supreme Court's been pretty clear that the first step of the old two-step analysis is essentially the same as what it was talking about. And so that's why I'm having difficulty thinking that what it really meant was, is he a person? Check. Is he really raising a Second Amendment claim? Check. Okay, now let's move on to historical analogs. If I may respond, the conduct continues to be – the conduct in this case is firearm possession in the home. There's a supervening regulatory gloss on that that implies – In connection with the commission of a drug trafficking offense. I was not able to establish that it was clearly improbable that it wasn't, but the finding was that it probably was not possessed in connection with a drug trafficking offense. So the underlying conduct, stripped of all regulatory gloss, is possession of firearm in the home, and that is covered by the Second Amendment. I submit. Thank you very much, counsel. The matter is submitted.
judges: NGUYEN, HURWITZ, Gutierrez